IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**JAMILA K. BARNES**                                                        **PLAINTIFF**

**V.**                                                         **CIVIL ACTION NO. 1:19-CV-7-DAS**

**NORTH MISSISSIPPI MEDICAL CENTER, INC.**                   **DEFENDANT**

**MEMORANDUM OPINION**

This court has before it the defendant's motion for summary judgment (# 50). After considering the matter, the court finds as follows:

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On January 8, 2019, Jamila K. Barnes ("Barnes"), filed a lawsuit against North Mississippi Medical Center, Inc. ("NMMC") alleging NMMC terminated her in violation of the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101. Barnes specifically alleges that NMMC terminated her employment because she had a disability, a history of a disability, or was regarded as disabled and that NMMC failed to provide her with reasonable accommodations. NMMC responds that Barnes has not created a triable issue of fact on one or more elements of her case in which she has the burden of proof and asks the court to dismiss her claims with prejudice.

Barnes worked as a nursing assistant at NMMC's hospital for approximately one year. Her job duties regularly included assisting patients with bathing, grooming, going to the toilet, feeding, checking vitals, and repositioning. On August 2, 2017, Barnes was assaulted by a

dementia patient while on duty. The patient became combative and kicked her in the stomach, causing her to fall into a sink and a CPAP machine. As a result, Barnes complained of pain in back, stomach, and arm. She was treated for this incident at NMMC's emergency room and discharged that same day. She was diagnosed with muscle contusions and sprains but was told she would be able to return to work by the following day.

Barnes testified that on the way home from the hospital she began to feel nauseated and blacked out. She was taken by ambulance back to NMMC's emergency room for treatment. She complained of back pain, abdominal pain, and nausea with vomiting and remained in the hospital for nearly a week. An x-ray of her back showed no fractures and a CT showed no pancreatic injury. Barnes testified she was told that she was suffering from PTSD, but that she was never diagnosed with it. Her discharge summary provides that "her exam was completely normal, except for some mild tenderness in the mid-thoracic spine." Despite this, she was diagnosed with anxiety, acute thoracic back pain, acute pancreatitis, nausea, and generalized abdominal pain.

On August 14, 2017, Barnes sought treatment from a doctor of her own choosing, Dr. Tyrongilia Walton. Dr. Walton's notes show that she discussed the possibility of Barnes having muscle contusions that could take several weeks to heal. She prescribed physical therapy for Barnes' back pain and released her to light duty with no lifting of more than twenty-five pounds, no repetitive stooping or bending, and intermittent sitting and standing. Barnes was also prescribed Lexapro for her anxiety.

During this time, NMMC transferred Barnes to a desk position where she worked her normal schedule but was permitted to work only so long as she felt she could. While on light duty, she did not complete a full scheduled day.

Dr. Walton's notes indicate that by September 7, 2017, Barnes' acute pancreatitis had resolved, but that she continued to complain of mid-thoracic back pain. On December 4, 2017, Dr. Walton released Barnes back to full duty with no restrictions. Barnes returned to work as a nursing assistant on December 5, 2017. She did not complete her entire shift, complaining of back pain and anxiety. Her anxiety caused her hands to shake badly and sweat. She texted her supervisor, Wendy Trickey, that she "know[s] she can't do the physical duties that are required" of her position. Barnes asked Trickey about the possibility of transferring to a unit coordinator position but requested to perform only the "nonphysical part" of the job. Trickey directed Barnes to contact Employee Health, which handles all employee health and leave issues.

The job description for the nursing assistant position and the unit coordinator position have slightly different physical requirements. A nursing assistant requires frequent lifting of seventy pounds, pushing/pulling, walking, repetitive bending, and reaching/overhead work, with only occasional sitting. A unit coordinator requires frequent lifting of no more than fifty pounds, sitting, and walking, with occasional pushing/pulling, repetitive bending, and reaching/overhead work.

In order to accommodate her, Employee Health requested a doctor's note explaining Barnes' physical limitations. However, Barnes did not provide a doctor's note and has not seen any physician after Dr. Walton to contradict the full release. Barnes testified this was because she had lost faith in Dr. Walton, and because she was unable to see another doctor without worker's compensation approval.

Barnes testified that because she knew she would be unable to perform the physical duties of her job she began to call in to work. She called in for her shifts on December 6, 7, 15,

17, 19, 20, and 30 of 2017 and January 3, 2018. However, she failed to call in or report to her shifts on December 24 and 26 of 2017 and January 1, 2018.

The three days that Barnes did not call in were days that she did not normally work. For most of her time at NMMC, Barnes worked a 3-1-3 schedule. This means that she would work three days, be off one day, work three days, and then off three days. Barnes testified that she knew Trickey changed the schedule during the holidays so that the same people were not working holidays every year. She also called in on days when she was told that she was not scheduled to work. Barnes testified she did not have access to her schedule when not on NMMC property. Trickey testified that although the dates were different than Barnes' usual schedule, she did not change the schedule and that this monthly schedule was released a month in advance.

Because Barnes' failed to call in or to report for work these three days, Trickey contacted Myra Wheeler, the senior employee with human resources for NMMC, and recommended that Barnes be terminated. Wheeler was responsible for terminating employees and she testified that once she received the recommendation, she contacted Employee Health to confirm that Barnes was released to full work. Wheeler testified that she made the decision to terminate Barnes based on the three no call/no shows and the company attendance policy which reads "[t]wo no call/no show occurrences within a 5 year period, separate or consecutive, normally will result in separation from employment." When she made the decision to terminate her, Wheeler was unaware of any other issues, such as Barnes inability to complete a shift and needing to get approval to see another doctor when she made the decision to terminate her.

After her termination, Barnes filed a Charge with the EEOC. In her first Charge, Barnes alleged that she was suffering from PTSD, but this was later changed to allege she was suffering

4

from a disability. Barnes testified that her medical issues were ongoing through her deposition and that she still could not stand for long periods of time without back pain.

## II. SUMMARY JUDGMENT STANDARD

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.,* 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322.

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id* at 323. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "*Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.,* 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.,* 6F.3d 313, 315 (5th Cir. 1995). When the parties dispute the facts, the court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). However, a nonmovant may not overcome the summary judgment standard with "conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence . . . ." *McFaul v. Valenzuela,* 684 F.3d 564, 571 (5th Cir. 2012).

### III. ANALYSIS AND DISCUSSION

The defendant argues that the plaintiff has failed to establish a prima facie case of discrimination and that the defendant has articulated a legitimate non-discriminatory reason for Barnes' termination. The defendant also argues that Barnes has not produced evidence to show that the proffered reason for her discharge was pretext. The defendant finally argues that Barnes failed to engage in the interactive process and failed to show that the alternate job she suggested was either a reasonable accommodation or in fact available. The plaintiff contends to the contrary that she has fully met her burden and can show at least a triable issue of fact for each element of her proof.

"The ADA prohibits an employer from discriminating against a 'qualified individual with a disability on the basis of that disability.'" *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting 42 U.S.C. § 12112(a)). When a plaintiff can offer only circumstantial evidence to prove a violation of the ADA the court should apply the burden-shifting framework established in *McDonnell Douglas*. See *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973)). In this case, Barnes is relying on circumstantial evidence and therefore this burden-shifting test applies.

The plaintiff must first make a prima facie showing of discrimination by proving that she: (1) had a disability; (2) was qualified for the job; and (3) was subject to an adverse employment decision because of her disability. *LHC Grp., Inc.*, 773 F.3d at 697. She may meet the disability requirement by showing an actual disability; that she was regarded as disabled; or that she had a history of disability. 42 U.S.C. § 12102(1) (2008). If the court finds the plaintiff proved her prima facie case, the burden will shift to the defendant to articulate a legitimate business reason

6

for the adverse employment action. Once the employer articulates a reason, the burden will shift back to the plaintiff to show by a preponderance of the evidence that the offered reason is pretextual. *Id.* at 694.

### A. Barnes' Prima Facie Case

### 1. Barnes Had an Actual Disability

To prove her prima facie case, Barnes must prove that she had a disability under the ADAAA and she was qualified for the job. See *Id.* at 697. The ADAAA defines disability as either: (A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1) (2008). Major life activities include, "performing manual tasks, standing, lifting, bending, and working." 42 U.S.C. § 12102(2)(B) (2008). An impairment is substantially limiting if the plaintiff is unable to perform or is significantly restricted in her ability to perform a major life activity that the average person in the general population can perform. See *Chevron Phillips Chem. Co., LP*, 570 F.3d at 614.

Impairments that last for a short period of time are typically not covered because they are considered transitory and minor. See 29 C.F.R. § 1630.2(j)(1)(ix). According to these guidelines, this six month "transitory and minor" exception only applies to the "regarded as" prong and does not apply to the "actual disability" or the "record of" prong. *Id.* Despite this, this court has held that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." *Clark v. Boyd Tunica, Inc.*, 2016 WL 853529 at *4 (N.D. Miss. 2016) (quoting 29 C.F.R. § 1630.2(j)); *see also Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998). Temporary impairments will be covered only if they are deemed

sufficiently severe, looking at the nature and severity of the injury, the duration or expected duration of the impairment, and the actual or possible long-term impact. *Id.*

The parties in this case disagree about whether Barnes suffers from an actual disability under the statute. Barnes argues that she is disabled based on acute pancreatitis, back pain, and PTSD (anxiety). NMMC argues that Barnes' impairments should not be considered disabilities under the ADA because they are temporary impairments.[1]

### **Acute Pancreatitis**

Barnes was diagnosed with acute pancreatitis when she was discharged from the hospital on August 8, 2017. By September 7, 2017, her medical records indicate that the condition had "resolved." Nevertheless, Barnes alleges she still suffers from acute pancreatitis but does not offer any medical evidence to support that claim. Nor did she provide any testimony to show how pancreatitis affected a major life activity. Consequently, the court finds Barnes' acute pancreatitis is a temporary impairment and there is no evidence to indicate it is sufficiently severe enough to be considered an actual disability.

### **Back Pain**

Additionally, Barnes was diagnosed with thoracic back pain. Dr. Walton discussed with Barnes the possibility of having muscle contusions that would take several weeks to heal and prescribed ten sessions of physical therapy. Barnes' estimated recovery time was only several weeks and her full recovery time, according to Dr. Walton, was only four months. Consequently, her back pain may be considered temporary.

---

[1] NMMC also argues that Barnes did not exhaust her administrative remedies for any of her claims because in her original charge with the EEOC she only indicated that she was suffering from PTSD. However, Barnes filed an amended charge which changed the claim to allege that she was suffering from "a disability." There is no evidence put forth by NMMC that this amended charge was not timely filed or should not be considered.

Nevertheless, if it is deemed sufficiently severe, her back pain could be considered a disability. During Barnes' recovery she was placed on restrictions that showed her back pain did affect one or more major life activities. She was unable to stand or sit for long periods of time; she could not engage in repetitive push/pull; and she could not lift more than twenty-five pounds. Barnes alleges that she still experiences back pain to this day, but that it is not as severe.

Barnes testified that her back pain, coupled with anxiety, made her unable to complete a shift at work after her doctor released her without restrictions. She further testified that though her back pain had lessened, it persisted through the date of her deposition. Given the command under ADAAA to construe disability broadly, "in favor of broad coverage of individuals …to the maximum extent permitted," 42 U.S.C. §12102(4)(A), the court finds there is a triable issue of fact as to whether Barnes suffers from a disability because of back pain.

The courts have been reluctant under the ADAAA to find as a matter of law that the plaintiff cannot prove either an actual or perceived disability. *Simmons v. Monroe County, Miss.*, 415 F.3d 723, 727 (N.D. Miss. 2019). Despite the lack of corroborating medical evidence, the court is not prepared to rule that no jury could find a disability or perceived disability based on her reported back pain.

### **PTSD/Anxiety**

Barnes also alleges that she suffers from PTSD (anxiety). In her Complaint and Amended Complaint, Barnes only listed PTSD, not anxiety. However, during her deposition she admitted that she was never diagnosed with PTSD and now claims to be suffering from anxiety. NMMC argues that Barnes cannot claim anxiety because she did not allege it in her Complaint or Amended Complaint. "A claim which is not raised in the complaint but, rather, is only raised in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of*

9

*Supervisors of LSU*, 429 F.3d 108, 113 (5th Cir. 2005). Because Barnes did not allege anxiety in her complaint but only as a response to NMMC's motion, she cannot claim anxiety. Additionally, because Barnes has admitted that she was never diagnosed with PTSD, she cannot establish that it constituted an actual disability.

However, even if this court found enough proof to go to the jury on either PTSD and/or anxiety, Barnes has failed to show how either condition substantially limited one or more life activities. She testified that her anxiety is episodic and when she attempted to return to full work her anxiety made her hands shake badly and sweat. Similar allegations have been rejected by other courts. *See, e.g., EEOC v. West Meade Place LLP dba The Health Care Center at West Meade Place*, 2019 WL 5394314 (M.D. Tenn. Oct. 22, 2019). Even with the lenient requirements of the ADAAA, Barnes has not produced evidence of continuing limitations as a result of her claimed mental disability.

### Regarded as Disabled/ History of Disability

A person is regarded as having a disability if the individual has an impairment which is not substantially limiting but which the employer perceives as being substantially limiting or has no impairment but is regarded by the employer as having a substantiality limiting impairment. *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996). NMMC argues that Barnes cannot establish that she was regarded as disabled because her impairments were transitory. Barnes has pointed to no proof from which it can be inferred that anyone involved in her termination was aware of her pancreatitis, much less that they considered her disabled as a result of this condition. However, Barnes alleges that she continued to suffer from back pain and anxiety after her full release to work. Barnes argues that NMMC regarded her as disabled because Trickey

said she did not want to transfer her to the unit coordinator position because she feared that she would not be able to perform the physical duties of the job.

After considering the matter and being mindful both of the leniency of the ADAAA and the fact that it is for the jury not only to decide disputed facts, but to draw inferences from those facts, the court finds there is a triable issue of fact as to whether Barnes was regarded as disabled.

The court also finds the above proof is sufficient to go to a jury regarding her back pain and anxiety on the alternative "history of disability."

### 2. She Was a Qualified Individual

After showing a triable issue of fact on the question of disability, Barnes must next show that she was a qualified individual. The ADA defines a qualified individual as: "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C § 12111(8). "[R]eassignment to a different job may be a reasonable accommodation, [but] the plaintiff bears the burden of proving that an available position exists and that he was qualified for and could, with reasonable accommodations, perform." *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017).

In assessing whether an individual is qualified, consideration must be given to the employer's judgment when determining what job functions are essential, and if the employer has prepared a written description of the job, then the description shall be considered evidence. *Id.* Furthermore, a defendant is not required to "relieve an employee of an essential function of his or her job, modify those duties, reassign existing employees to perform those jobs or hire new employees to do so." *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999). A requested accommodation that a disabled employee not perform an essential function of the job

11

is not a reasonable accommodation. *Claiborne v. Recovery Sch. Dist.*, 690 F. App'x 249, 254-55 (5th Cir. 2017) (citing *Barber v. Nabors Drilling U.S.A., Inc.,* 130 F.3d 702, 709 (5th Cir. 1997)).

      NMMC has introduced a written job description for both the nursing assistant and unit coordinator positions, and there is no testimony by Barnes that indicates the descriptions are not accurate. The physical requirements for the nursing assistant position include frequent lifting, pushing/pulling, walking, repetitive bending, and reaching/overhead work. It required lifting to seventy pounds. Barnes testified that she was unable to perform 90-95% of the physical requirements of the nursing assistant position because of pain in her back. For her to be able to continue working as a nursing assistant, she would need to be relieved of the majority of the essential functions of her job. Barnes does not contend there was a reasonable accommodation that would allow her to perform that job.

    Barnes testified that she asked Trickey about the possibility of transferring to a unit coordinator position, but Trickey did not transfer her, instead referring her to Employee Health. As noted *supra,* the physical duties of the unit coordinator position are very similar to those of the nursing assistant position. Barnes points to a few differences. Some of the physical requirements that are listed as "frequently" for a nursing assistant are listed as "occasional" for a unit coordinator and the lifting requirement is fifty pounds rather than seventy. But Barnes specifically requested that she be allowed to do *only* the non-physical aspects of the unit coordinator position. To show that transfer to the unit coordinator position was a reasonable accommodation, Barnes must offer proof that, though she could not perform as a nursing assistant, she could perform the essential tasks of the unit coordinator post, including the essential physical tasks, and she has not done so. *Claiborne,* 690 F. App'x at 255.

12

The plaintiff argues that because her treating physician released her to return to work without any restrictions, she was qualified to perform the unit coordinator position. This would be compelling proof, particularly considering that there is no medical evidence after the release to contradict its accuracy. If accepted by the jury, this is proof the plaintiff is not suffering from any disability.

The problem, however, is Barnes' testimony. It is undisputed that she attempted to return to her work as a nursing assistant and failed to complete a single shift. She told her employer she could not perform the physically demanding tasks of her nursing assistant's job. She requested that she be allowed to do work as a unit coordinator but specified that she could not perform the physical tasks of that position. In other words, Barnes told her employer she could not perform her original job and lacked the ability to perform the physical work of the job she sought as an accommodation.

Like the plaintiff in *Baldwin v. Blue Cross Blue Shield of Alabama,* Barnes' argument "faults her employer for taking an employee at her word." *Baldwin v. Blue Cross Blue Shield of Alabama*, 480 F.3d 1287, 1308 (11th Cir. 2007). Having told her employer she could not do her original job or perform the physical requirements of the requested transfer job, the court "will not listen to [Barnes] complain that [NMMC] believed her." *Id.* Consequently, there are no disputed facts as to whether the plaintiff could, with reasonable accommodations, perform the position she requested.

### 3. Legitimate Reason/Pretext

The court further notes that the plaintiff's proof fails to rebut the legitimate, nondiscriminatory reason NMMC gave for terminating Barnes. See *LHC Grp., Inc.*, 773 F.3d at 697. NMMC explains that it terminated Barnes because she violated their attendance policy by no call/no showing for three of her scheduled shifts. The attendance policy provided that any

13

two no-call/no-shows within a five-year period was grounds for termination. The uncontested evidence shows that Barnes did not report or call in on the days of December 24, 2017, December 26, 2017, and January 1, 2018. This is a legitimate business reason for terminating Barnes, and the plaintiff has failed to rebut this showing.

Pretext can be established "by showing that defendant's proffered explanation is false or unworthy of credence." *Jackson v. Cal-W Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap, Inc.*, 333 F. 3d 572, 578 (5th Cir. 2003). The Fifth Circuit has held that a court may even infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct." See *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 594 (5th Cir. 2007). In the present case, Barnes argues the court should infer pretext because NMMC offered alternative reasons for not transferring Barnes.

Barnes testified that the dates she missed were not her regularly scheduled dates, and she argues that NMMC has offered inconsistent explanations for its conduct. She claims Trickey said she could not transfer Barnes because Barnes was her best aide. Trickey denies this assertion but testified she did not transfer Barnes because Barnes needed to be trained and could not do the physical requirements of the job, which is consistent with what Barnes herself said. Although these are different reasons, they are not mutually exclusive of each other. Trickey also instructed Barnes to see Employee Health so she could be accommodated because she did not have any light work on her floor. This alleged inconsistency speaks not to the reasons for the termination but to the question of accommodation.

The existence of this attendance policy is uncontested, and there is no suggestion of selective enforcement. The plaintiff, without dispute, failed to call in on three days during the

14

Christmas and New Year's holidays when she was scheduled to work. She claims she did not know she was scheduled to work on these days and could not access the NMMC computer to check her schedule remotely.

Regardless, it was Barnes' responsibility to check her schedule, and she knew the usual schedule was altered near the holidays to allow employees to alternate the days they could spend with family. It was a monthly schedule that had been put out in advance to allow employees to make their holiday plans. There is no evidence the schedule was changed after it was posted. It stands to reason that NMMC would expect its employees to know the schedule, particularly during a time when it was subject to change. Barnes did work one shift that month on December 5, 2017, but offers no explanation for why she could not have checked her schedule at that time. She blames Trickey and argues that Trickey was the person who made the schedule and who recommended her termination, so she should have been aware that the days she missed were not her normally scheduled days. Blaming the defendant for her failure to know the work schedule does not convince the court that the defendant's reason for terminating her was not a legitimate non-discriminatory reason, nor does it show the defendant's reason was pretetextual.

In other words, Barnes has offered no evidence to show that NMMC's explanation was not the real reason for her termination, and thus summary judgment is appropate.

### B.  Failure to Accommodate and Engage in the Interactive Process

Barnes also alleges that NMMC failed to accommodate her by not transferring her to another position or by failing to allow her a leave of absence.

Discrimination includes the failure to make "reasonable accommodations to the known physical… limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). The burden of proving inability to accommodate is on the employer. *Prewitt v.*

*U.S. Postal Service*, 662 F.2d 292, 308 (5th Cir. 1981). Setting aside, without decision, NMMC's claim that Barnes failed to exhaust her administrative remedies on the accommodation issue, the court finds the same failure of proof that would support finding she is a qualified individual, likewise dooms her claim that NMMC failed to accommodate her. As discussed previously, transfer to the requested unit coordinator position was not a reasonable accommodation because the plaintiff claimed she could not perform the physical functions of the job.

To prevail on a failure to accommodate claim, a plaintiff must show "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Bluitt v. Walmart Stores East, LP*, 2019 WL 3254792 at *4 (N.D.Miss. 2019) (quoting *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)). The Fifth Circuit has found that an employer may require an employee to provide documentation in order to substantiate the alleged limitation. *Delaval v. PTech Drilling Tubulars, LLC,* 2000 WL 33407181, at *10 (5th Cir. 2000).

Once Barnes returned to full work and told Trickey she could not do the physical duties of the job, Trickey sent Barnes to Employee Health so she could be accommodated. Employee Health had Dr. Walton's report releasing Barnes to return to work without any restrictions. Understandably, the office then requested that Barnes provide them with a doctor's note explaining her limitations, so she could be considered for light duty, but Barnes never provided documentation. Barnes now claims she did not provide that documentation because she "was under workers' compensation at the time, and they have a limit of two (2) doctors that can be seen by the employee." She had been seen by Dr. Hubbard related to her workers' compensation claim and by the doctor of her own choosing, Dr. Walton. Dr. Walton subsequently opined there

16

was virtually nothing wrong with her. However, Barnes could get yet another opinion if she could show Dr. Walton was negligent. Barnes failed to do this as well because she claimed NMMC terminated her before she had an opportunity to do so. The record shows, however, that she was allowed to see another physician. She admits she then attempted to see a nurse practitioner who refused to treat her because – according to Barnes – she did not want to be "affiliated with North Mississippi Medical Center." Barnes does not explain how treating her would have caused the nurse practitioner to be "affiliated" with NMMC. She also admitted that she tried to make an appointment with another physician who was not taking new patients and after that, she chose not to try again. As noted by NMMC this was a personal choice Barnes made and not the result of an unfair policy or an excuse for not seeing another physician.

Also, as part of her claim for failure to accommodate, Barnes argues that NMMC failed to engage in the interactive process. It is well-established that an employer may need to initiate an informal, interactive process with a qualified individual with a disability in order to reasonably accommodate them. 29 C.F.R. § 1630.2(o)(3). And if an employer's failure to make a good faith engagement in the interactive process leads to the employee not being reasonably accommodated, the employer violates the ADA. *Loulseged v. Akzao Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). However, "an employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer." Id. (quoting *Griffin v. United Parcel Servs., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011)). One way in which an employee may be seen as responsible for the breakdown is when she fails to provide documentation to substantiate an alleged limitation. *See Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 225 (5th Cir. 2011). In the present case, it is clear the interactive process broke down because Barnes failed to provide documentation to

17

NMMC. Barnes was fully aware that NMMC had a full release from Dr. Walton but chose not to pursue a contrary opinion when she had the opportunity, and such failure is fatal to her claim.

Barnes finally argues that NMMC failed to accommodate her because she was not provided with a leave of absence. She did not request such a leave, nor did she allege such failure in her complaint. "A claim which is not raised in the complaint but, rather, is only raised in response to a motion for summary judgment is not properly before the court." *Cutrera,* 429 F.3d at 113. Consequently, this claim fails as well.

### IV. CONCLUSION

NMMC's Motion for Summary Judgment should be granted and Barnes' claims should be dismissed. The plaintiff has failed to establish triable issues of fact for each of the elements of her prima facie case. Having failed to show she can meet her burden of proof at trial, the defendant is entitled to summary judgment.

Additionally, Barnes has failed to prove that NMMC failed to accommodate her, because the requested accommodation is not, as a matter of law, a reasonable accommodation.

Accordingly, the defendant's motion for summary judgment is granted, and the plaintiff's complaint shall be dismissed with prejudice.

A separate judgment shall be entered.

**THIS,** the 25th day of June, 2020.

/s/ David A. Sanders
**U.S. MAGISTRATE JUDGE**